RONALD A. ARTHUR,               CIVIL NO. 09-3043 (RHK/JSM)

      Petitioner,

v.                               <u>REPORT AND RECOMMENDATION</u>

Warden WENDY J. ROAL,

      Respondent.

This matter is before the undersigned United States Magistrate Judge on Ronald A. Arthur's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 1] and Ronald A. Arthur's Motion for Judgment on the Pleadings [Docket No. 13]. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL BACKGROUND

Petitioner Ronald A. Arthur ("Arthur") is serving a 54-month sentence, followed by two years of supervised release. <u>See</u> Declaration of Ann C. Kinyon ("Kinyon Decl.") ¶ 2, Attach. 1 (Public Information Data). Arthur is presently incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FCP-Duluth"). <u>Id.</u> Arthur currently has a projected release date of January 25, 2011, via good conduct time release. <u>Id.</u>

Arthur was reviewed for residential reentry center placement on August 5, 2009, pursuant to the Second Chance Act of 2007. <u>See</u> Kinyon Decl. ¶ 3, Attach. 2 (Review for Residential Reentry Center, Second Chance Act of 2007). Staff at FCP-Duluth planned to make a recommendation to the Community Corrections Manager's Office that Arthur be given 150-180 days of Residential Reentry Center placement (referenced as "RRC" or as a "CCC" (Community Corrections Center) placement) and that this was a "sufficient duration

to provide the greatest likelihood of successful integration into the community." Id. Based on this proposed recommendation for RRC placement, it is anticipated that Arthur will transfer to a halfway house in approximately August 2010. Id. Staff based their determination for RRC placement on the following factors: the resources of the facility contemplated; the nature and circumstances of Arthur's offense; Arthur's history and characteristics, including his participation, or lack of, in education and counseling programs; his discipline history and prior record; any statement by the sentencing court that imposed the sentence against Arthur (none of which were relevant in this case); the fact that Arthur was sentenced below the Sentencing Commission's guideline range for the offense for which he was convicted; and Arthur's resources, which included family support, specialized and general job skills, financial resources, life skills and community resources. Id.

Arthur filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that the Bureau of Prisons ("BOP") violated its "duties under 18 U.S.C. § 3624(c) and 42 U.S.C. § 17541 by denying [his] request for a 12-month prerelease transfer to community confinement. . . ." See Petition for Writ of Habeas Corpus ("Petition"), at p. 3; see also Preliminary Brief and Appendix of Exhibits in Support of Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Petition for Writ of Mandamus and/or Issuance of an Injunction ("Petitioner's Mem.") at p. 11. In support of his Petition, Arthur has challenged the validity of an April 14, 2008 Memorandum from the BOP's General Counsel's office, which he claimed instructed BOP staff that an inmate's pre-release placement needs could usually be accommodated by a placement of 6 months or less and denied staff discretion to recommend placement longer that 6 months. See Petitioner's Mem. at p. 4. According to Arthur, the April 14, 2008 Memorandum was contrary to the amendments to the Second

Chance Act of 2007, 18 U.S.C. § 3624(c).  See Petitioner's Mem. at p. 5; see also Brief in Support of Petitioner's Motion for Judgment on the Pleadings ("Petitioner's Brief") at pp. 5-6.

In addition, Arthur claimed that BOP staff violated 18 U.S.C. § 3621 and Program Statement 5100.08 by denying his request for a "'Code 308 – Lesser Security – Institutional Classification Transfer'" in community confinement even though he had a negative risk BP-388 score.  See Petition at p. 3; see also Petitioner's Mem. at pp. 3, 11; Petitioner's Brief at pp. 11-12.

## II.  STATUTORY AND REGULATORY BACKGROUND

### A.  Background to Second Chance Act of 2007, 18 U.S.C. § 3624(c)

The starting place for the history leading up the Second Chance Act of 2007 is a different statute, 18 U.S.C. § 3621(b), which provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> (1)   the resources of the facility contemplated;
> (2)   the nature and circumstances of the offense;
> (3)   the history and characteristics of the prisoner;
> (4)   any statement by the court that imposed the sentence. . . .
> (5)   any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the

3

transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Another statute, 18 U.S.C. § 3624(c), directs the BOP to give special attention to the housing assignments of prisoners who are approaching the end of their sentences in order to help them successfully re-enter society upon being released from custody. Prior to April 9, 2008, § 3624(c), provided in relevant part:

> (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford the Prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (emphasis added), amended by 18 U.S.C. § 3624(c) (April 9, 2008).

In December 1998, the BOP issued Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedures." Program Statement 7310.04 directed the BOP to make RRC recommendations "based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly," and stated that a number of factors must be weighed in determining the length of RRC placement including, the inmates "individual needs and existing community resources". Program Statement 7310.04 (Dec. 16, 1998) at 7, http://www.bop.gov/policy/progstat/7310_004.pdf. In addition, the Statement provided that the BOP "may place an inmate in a [RRC] for more than the 'last ten per centum of the term,' or more than six months if appropriate" (id. at 4),[1] but also stated that while

---

[1]     As the Eighth Circuit recently explained in Miller v. Whitehead, 527 F.3d 752 (8th Cir.

4

"placement beyond 180 days is highly unusual, it is possible with 'extraordinary justification.'  In such circumstances, the Warden shall contact the Regional Director for approval. . . ."  Id. at 8.

Thus, before December 2002, the BOP understood that a RRC was a "place of imprisonment," and that, pursuant to § 3621(b), a federal prisoner could be assigned to a RRC at anytime during his sentence, although customarily, federal prisoners were sent to RRCs during the last six months of their sentences, to meet the transitional requirements imposed by § 3624(c).  But on December 13, 2002, the Office of Legal Counsel ("OLC") of the United States Department of Justice issued a memorandum, which declared that this longstanding interpretation and implementation of the housing assignment statutes was incorrect.[2]

The OLC concluded that the term "place of imprisonment" could not include a RRC assignment, which meant that prisoners could not be assigned to RRCs pursuant to the general housing authority provided by § 3621(b).  Instead, the OLC decided that an inmate could be transferred to a RRC only as part of the pre-release programming mandated by

2008) (discussed in detail in Section III.C, infra):

> [Program Statement 7310.04] opined that an RRC is a "penal or correctional facility" within the meaning of § 3621(b), and implicitly assumed that an RRC also is a "place of imprisonment." The statement reasoned that § 3624(c) did not restrict the use of RRCs to the last ten percent of the inmate's term, because § 3621(b) allows the BOP generally to "designate any available penal or correctional facility."

Id. at 754.  Also, as discussed later in this opinion, the Eighth Circuit in Miller upheld the "extraordinary justification requirement" set forth in Program Statement 7310.04.

[2]     The OLC Memorandum Opinion dated December 13, 2002, can be found at 2002

§ 3624(c). According to the Memorandum, federal law prohibited offenders from being assigned directly to halfway houses, even though that practice has been used for many years, in many cases, with the universal approval of U.S. Attorneys, the BOP, and the federal judiciary.

The OLC Memorandum also included a brief reference to the BOP's longstanding practice of assigning federal prisoners to RRCs for the final six months of their sentences. The Memorandum indicated that § 3624(c) authorized the BOP to assign a prisoner to a half-way house <u>only for the lesser</u> of (a) the last six months of his sentence, or (b) the last ten percent of his sentence.

The OLC Memorandum prompted Deputy Attorney General Larry D. Thompson to write his own Memorandum to the Director of the BOP. That second Memorandum, which is dated December 16, 2002 (just three days after the OLC Memorandum) included the following paragraph addressing the BOP's practice of sending prisoners to halfway houses for the last six months of their sentences:

> The OLC opinion additionally notes that, while BOP does have limited statutory authority in 18 U.S.C. § 3624(c) to transfer an offender to a CCC prior to his release so as to 'afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community,' there are firm restrictions on such transfers. Specifically, the transfer may not exceed the <u>lesser</u> of (i) the last ten percent of the sentence imposed on the offender, i.e., the period of time in which the offender was committed to the custody of the BOP, or (ii) six months. The OLC opinion concludes that there are no bases for disregarding these time limitations."

(emphasis in the original).[3]

WL 31940146.

[3]    The Thompson Memorandum of December 16, 2002, can be found on the Internet at http://www.usdoj.gov/dag/readingroom/imprisonment.htm. The section of that

In response to this paragraph of the Thompson Memorandum, as well as the earlier OLC Memorandum, the BOP immediately changed its policies and practices for assigning prisoners to RRCs.  The BOP announced that on a going forward basis, it would exercise its authority under § 3624(c) based on its new understanding of the law -- i.e., that the statute itself allows a prisoner to be placed in a RRC only for the lesser of the last ten percent of his sentence or the last six months of his sentence.

Thereafter, federal prisoners challenged the BOP's new interpretation of § 3624(c) in numerous federal court cases.  Some courts agreed with the BOP's new understanding and implementation of § 3624(c), but many others concluded that the BOP was wrong.  The issue came before the Eighth Circuit Court of Appeals in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004).

In Elwood, the court rejected the BOP's restrictive interpretations of §§ 3621(b) and 3624(c).  The court held that "§ 3621(b) gives the BOP the discretion to transfer prisoners to CCCs at any time during their incarceration."  Id. at 847 (emphasis added).  The court further held that, pursuant to § 3624(c), "the BOP is required to place prisoners in 'conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community' during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable [; but] [t]his duty shall not extend beyond the last six months of the prisoner's sentence."  Id. (emphasis added); see also Miller, 527 F.3d at 755 ("Elwood [held] that § 3624(c) requires the BOP, when practicable, to transfer a prisoner to an RRC for a reasonable part of the last ten percent of his sentence, not to

_____

Memorandum that is quoted in the text can be found at p. 2, § II.

exceed six months, but …§ 3624(c) does not *forbid* the BOP from designating a prisoner to an RRC for more than ten percent of his sentence pursuant to its authority under § 3621(b).") (citation omitted) (emphasis in original).

In response to <u>Elwood</u> and a similar decision from the First Circuit, <u>Goldings v. Winn</u>, 383 F.3d 17 (1st Cir. 2004), the BOP re-examined its RRC assignment policies, and on February 14, 2005, it adopted 28 C.F.R. §§ 570.20 and .21, which categorically limited an inmate's eligibility for pre-release to community confinement during the last ten percent of the prison sentence being served, not to exceed six months. <u>See</u> <u>Miller</u>, 527 F.3d at 755.

On April 6, 2006, the Eighth Circuit declared regulations §§ 570.20 and 570.21 invalid and in conflict with 28 U.S.C. § 3621(b). <u>See</u> <u>Fults v. Sanders</u>, 442 F.3d 1088, 1092 (8th Cir. 2008). The Eighth Circuit, like several other circuits,[4] held that the BOP may not categorically determine the amount of time that a prisoner will be allowed to spend in community confinement, but in order to comply with 28 U.S.C. § 3621(b), must instead exercise its discretion on a case-by-case basis and consider the particular circumstances of the individual prisoner. In light of the various decisions invalidating §§ 570.20 and 570.21, the BOP changed its position in the Eighth Circuit and in those circuits that had similarly declared the regulations invalid, by resorting to back to Program Statement 7310.04 which permitted RRC placements for longer than 180 days only with "extraordinary justification." <u>See</u> <u>Miller</u>, 527 F.3d at 755.

---

[4]      The following courts also found the regulations to be invalid: <u>Rodriguez v. Smith</u>, 541 F.3d 1180, 1184-1189 (9th Cir. 2008); <u>Wedelstedt v. Wiley</u>, 477 F.3d 1160 (10th Cir. 2007); <u>Levine v. Apker</u>, 455 F.3d 71, 85-87 (2d Cir. 2006); and <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 244 (3d Cir. 2005). On the other hand, the First Circuit, found that §§ 570.20 and 570.21, were a reasonable exercise of BOP's discretion in carrying out its statutory duties under § 3621(b). <u>See</u> <u>Muniz v. Sabol</u>, 517 F.3d 29, 38-40 (1st Cir. 2008).

Ultimately, any differences of opinion by the circuits was resolved by the Second Chance Act of 2007, which amended 18 U.S.C. § 3624(c) effective April 9, 2008. Section 3624(c) now provides in relevant part:

> (1) In General. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (<u>not to exceed 12 months</u>), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> * * *
>
> (4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
> * * *
>
> (6) Issuance of Regulations. The Director of the BOP shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the BOP is
>
> (A) conducted in a manner consistent with section 3621(b) of this title;
>
> (B) determined on an individual basis; and
>
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c)(1), (c)(6) (emphasis added).

The plain language of the amendment to § 3624(c) increased the maximum amount of pre-release placement time from six months to 12 months and required implementing regulations by the BOP designed to ensure that placement in a RRC by the BOP was done

in a manner that is consistent with § 3621(b), determined on an individual basis, and was of a sufficient duration to "provide the greatest likelihood of successful reintegration into the community."  As before, § 3624(c) provided the BOP with discretion to determine whether and how long an inmate should spend in a halfway house before his release, so long as the pre-release placement was practicable and the BOP considered the factors set forth in § 3621(b).

**B.** **April 14, 2008 Memorandum from the BOP's General Counsel to Chief Executive Officers**

Five days after enactment of the Second Chance Act, the BOP issued a Memorandum to Chief Executive Officers titled "Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007" ("April 14, 2008 Memorandum"). The April 14, 2008 Memorandum provided guidance to BOP staff for RRC placement, as follows:

> **III.**
> **What procedural adjustments to current policy are required?**
>
> Staff must comply with PS 7310.04 in considering inmates for pre-release RRC placements, with the following adjustments:
>
> * * *
>
> **(C)     Criteria for Pre-Release RRC Placements** -- The Act requires that inmates be individually considered for pre-release RRC placements using the following five-factor criteria from 18 U.S.C. § 3621(b):
>
> (1)     The resources of the facility contemplated;
> (2)     The nature and circumstances of the offense;
> (3)     The history and characteristics of the prisoner;
> (4)     Any statement by the court that imposed the sentence:

> > (a)　concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > (b)　recommending a type of penal or correctional facility as appropriate; and
>
> (5)　Any pertinent policy statement issued by the U.S. Sentencing Commission.
>
> * * *
>
> [I]n accordance with the Act, each individual inmate's pre-release RRC decision must be analyzed and supported under the five-factor criteria.
>
> **Additionally**, the Act requires staff to ensure that each pre-release RRC placement decision is "of sufficient duration to provide the greatest likelihood of successful integration into the community." <u>See</u> 18 U.S.C. § 3624 (c)(6)(C) (amended). This means Bureau staff <u>must</u> approach every individual inmate's assessment with the understanding that he/she is now <u>eligible</u> for a maximum of 12 months pre-lease RRC placement. Provisions in PS 7310.04 that reflect any other possible maximum timeframe must be ignored.
>
> **(D)　Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months** -- While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

Declaration of Bernetta Miller ("Miller Decl."), Ex. A at pp. 3-4 (emphasis in original).

The most noteworthy portion of the Memorandum for the purposes of this case are the statements by the BOP that inmate needs can generally be met by a RRC placement of six months or less and the responsibility for the approval for RRC placement of over six months lies with the Regional Director.

### C.　BOP Regulations Issued Pursuant to the Second Chance Act

On October 21, 2008, the BOP adopted new interim regulations, pursuant to § 3624(c), which revised 28 C.F.R. §§ 570.21 and 570.22 as follows:

§ 570.21 Time-frames.

(a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

(b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.

(c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

§ 570.22 Designation.

Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

Pre-Release Community Confinement, 73 Fed. Reg. 62,440, 64,443 (Oct. 21, 2008) (emphasis added).

Absent from these regulations is any mention of the statement found in the April 18, 2008 Memorandum that inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less, or the requirement that the Regional Director's written concurrence must be obtained before submitting the placement to the RRC.

**D.** **November 14, 2008 Memorandum from the BOP's General Counsel to Chief Executive Officers**

On November 14, 2008, the BOP issued a Memorandum to Chief Executive Officers which provided, in relevant part, the guidance to BOP staff when an inmate requested transfer to a RRC and more than 12 months remained from an inmate's projected release date.  See Miller Decl., Ex. B at p. 1.  In a footnote to the November 14, 2008 Memorandum, the BOP stated:

> Previous guidance titled Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007, was issued April 14, 2008, and remains in full effect.  That guidance instructs staff how to review inmates for pre-release RRC placement during their last 12-months of their incarceration…. Regulations relating to that guidance were issued on October 21, 2008, and are located at 28 C.F.R. §§ 570.21 and 570.22.

Id. n. 1.  Like Program Statement 7310.04 and consistent with the April 14, 2008 Memorandum, the November 14, 2008 Memorandum reminded BOP officials that for inmates requesting transfer to a RRC where more than 12 months remained on an inmate's projected release date, a "RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs." Id. at p. 3.  In short, the BOP's position with respect to inmates seeking RRC placement prior to their last 12 months of incarceration and for a period in excess of six months was the same as it was before the enactment of the Second Chance Act – it could only occur when unusual or extraordinary circumstances justified such a placement and the Regional Director's permission had been obtained.

## III.    ANALYSIS

### A.    Right to RRC Placement for 12 Months[5]

---

[5]    The Government argued that Arthur's Petition should be dismissed on the grounds

Arthur has requested that this Court direct Respondent to immediately reconsider his designation to a RRC so that he can receive a full 12 months of RRC placement. <u>See</u> Petitioner's Mem. at pp. 11-12. To the extent that Arthur is claiming that he is entitled to 12 months of RRC placement, his Petition should be denied and dismissed. There is nothing in the plain text of 18 U.S.C. §§ 3621(b) or 3264(c) or 42 U.S.C. § 17541 that gives inmates <u>the right</u> to 12 months of RRC placement. Section 3621(b) gives the BOP the discretion "at any time" to place an inmate into "any available penal or correctional facility" and to "direct the transfer of an inmate from one penal or correctional facility to another." 18 U.S.C. § 3621(b). "[Section] 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system." <u>Elwood</u>, 386 F.3d at 847.[6]

that he has not exhausted his administrative remedies. <u>See</u> Government's Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Govt. Mem.") at pp. 14-17. Specifically, the Government claimed that Arthur failed to appeal the BOP Regional Office's decision, as to his grievance, to the Central Office, as is required by 28 C.F.R. §§ 542.13-542.15, within 30 days of the Regional Office's response. <u>Id.</u> at pp. 15-16. Arthur has admitted that he did not initially exhaust his administrative remedies, but claimed that he should be excused from complying with the exhaustion requirement as it would be futile to do so where he was challenging the legal conclusions, as opposed to the facts, leading to the BOP's decisions. Subsequently, Arthur represented to the Court in a January 8, 2010 letter (which attached receipts regarding "Administrative Remedy" from the Central Office) that he had appealed his grievance to the Central Appeals Office, that a response was due by the BOP on January 2, 2010, and that he had not yet received a response and therefore, he had exhausted his administrative remedies pursuant to 28 C.F.R. § 542.18. While exhaustion in § 2241 cases is generally required (<u>see</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992)), "because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional," this court may turn merits of Arthur's petition without regard to the exhaustion requirement. <u>Lueth v. Beach</u>, 498 F.3d 795, 797 n. 3 (8th Cir. 2007) (citations omitted). Therefore, this Court does not need to reach a decision as to whether Arthur failed to exhaust his administrative remedies, or whether requiring him to do so would have been futile, as for reasons stated in this Report and Recommendation, his Petition fails on the merits.

[6]     The Eighth Circuit in <u>Elwood</u> found that the BOP has <u>discretion</u> to transfer prisoners at any time during their incarceration, but only has <u>the duty to consider</u> a transfer to a RRC

Section 3264(c) merely provides that pre-release placement into a RRC cannot exceed 12 months.  See 18 U.S.C. § 3264(c).  The prisoner reentry incentive program under 42 U.S.C. § 17541(a)(2)(A), directs the BOP to  establish "[i]ncentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include . . . "[i]ncentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include -- (A) the maximum allowable period in a community confinement  that would provide for the 'maximum allowable period in a community facility.'" 42 U.S.C. § 17541(a)(2)(A).  As such, even though Arthur engaged in education and reentry programs (see Appendix of Exhibits in Support of Writ of Habeas Corpus under 28 U.S.C. § 2241, Exs. B, E-1), the "Statute does not require that the BOP make maximum RRC placement an incentive for participating in a reentry program.  Rather, the Statute merely authorizes the BOP to make maximum RRC placement an incentive, in its own discretion." Brown v. Rios, Civ. No. 08-5752 (JRT/RLE), 2009 WL 5030768 at *7 (D. Minn. Dec. 14, 2009) (citations omitted).  As such, this Court finds that there is no statutory requirement which entitles Arthur to a full 12 months of RRC placement under the Second Chance Act.

**B.    Validity of the April 14, 2008 Memorandum**

Arthur challenged the validity of the April 14, 2008 Memorandum, (and by extension, the November 14, 2008 Memorandum), which he claimed improperly instructed BOP staff that pre-release placement needs can usually be accommodated by a placement of 6

---

in the last six months of a sentence.  See Elwood, 386 F.3d at 847 (finding that the BOP's duty to place prisoners in conditions that will prepare the prisoner for re-entry into the community "shall not extend beyond the last six months of the prisoner's sentence.").

months or less and denied staff discretion to recommend placement longer than 6 months.

 See Petitioner's Mem. at pp. 4, 11; see also Petitioner's Brief at pp 5-9.  According to

Arthur, the April 14, 2008 Memorandum is contrary to the Second Chance Act of 2007.

See Petitioner's Brief at pp. 1, 5-6.  In support of this contention, Petitioner relied on a

District of New Jersey case, Strong v. Schultz, 599 F. Supp.2d 556 (D.N.J. 2009).  Id. at pp.

6-7.

 In Strong, the court held:

> [B]y instructing staff that pre-release placement needs can
> usually be accommodated by a placement of six months or
> less and by denying staff the discretion to recommend a
> placement longer than six months (without advance written
> approval from the Regional Director), the April 14, 2008,
> Memorandum is inconsistent with the Second Chance Act's
> amendments to § 3624(c). The April 14, 2008, Memorandum
> impermissibly constrains staff's discretion to designate inmates
> to a CCC for a duration that will provide the greatest likelihood
> of successful reintegration into the community, contrary to §
> 3624(c)(6)(C). Accordingly, because the duration of Strong's
> CCC placement was determined pursuant to these
> impermissible limitations, the BOP abused its discretion in
> determining that Strong's placement would be for six months.
> This Court will therefore grant the writ to Strong, and remand
> the matter to the BOP with instructions to consider Strong for a
> longer placement in a CCC, in accordance with the Second
> Chance Act, and without regard to the April 14, 2008,
> Memorandum.

599 F. Supp.2d at 563.

 In opposition, the Government argued that this Court should not follow the Strong

decision because the April 2008 Memorandum follows and sets forth all of the requirements

of the Second Chance Act and because the Strong decision is inconsistent with the Eighth

Circuit's decision and analysis in Miller supra.  See Govt. Mem. at pp. 24-25.  This Court

agrees.  In Miller, inmates had asked for various amounts of RRC placement ranging from

8-10 months to a request by one inmate for 73 months. 527 F.3d at 755. The warden advised the inmates that they had not established an "extraordinary justification" for serving more than 180 days in a RRC. Id. The inmates then filed habeas petitions, asserting that § 3621(b), as interpreted by Elwood and Fults, prohibited the BOP from using the time frames specified in the Program Statement 7310.04 or from requiring an "extraordinary justification" for placements in a RRC longer than 6 months as set forth in this statement. Id.[7] The district court denied the petitions, reasoning that the BOP was authorized to impose a requirement of "extraordinary justification" for early placement at an RRC, and that there was no showing that the BOP had failed to consider the factors in § 3621(b) in making individualized determinations concerning who was placed in a RRC. Id. at 755-56.

On appeal, the Eighth Circuit rejected the inmates' contention that the "extraordinary justification" requirement was a prohibited non-statutory "factor" under § 3621(b), stating that the "'extraordinary justification' requirement [was] not a factor at all." Id. at 757. Instead, the court characterized the "extraordinary justification" requirement as "a standard for deciding whether to grant a request for extended placement in an RRC." Id.[8] As the court stated:

---

[7]    As discussed earlier in this opinion, Program Statement 7310.04 provided that a placement beyond 180 days, while "highly unusual" and only possible with "extraordinary justification," could be obtained upon approval of the Regional Director.

[8]    The Miller court explained in a footnote that the new guidance provided by the BOP in its April 2008 Memorandum did not appear to supersede Program Statement 7310.04:

> The new BOP guidance issued in light of the Second Chance Act includes an "adjustment" to PS 7310.04, which states that "RRC needs can usually be accommodated by a placement of six months or less," and that placement in an RRC for more than six months must be approved in writing by a regional

17

> Unlike the situation in <u>Fults</u>, the requirement that an inmate make a stronger showing under the statutory factors to justify an extended RRC placement does not categorically remove the opportunity for the BOP to exercise its discretion with respect to an entire class of inmates. Rather, the program statement reflects a determination that ordinarily a placement of more than 180 days is not appropriate under § 3621(b). But a particular inmate still has an opportunity to show that in the individual circumstances of his case, a longer placement would be justified.

<u>Id.</u> at 758.

While <u>Miller</u> arose under § 3621(b), and not § 3624(c), the Court finds the rationale underlying its holding persuasive in this case. <u>See</u> <u>Stanko v. Rios</u>, Civ. No. 08-4991(JNE/JJG), 2009 WL 1303969 at *5 (D. Minn. May 8, 2009) ("As this discussion indicates, the <u>Miller</u> decision did not consider the relationship between the Program Statement and the Second Chance Act. But as this Court previously determined, 18 U.S.C. § 3624(c), as amended by the Second Chance Act, does not disturb the discretion granted to the BOP under § 3621(b). Because the Program Statement does not violate § 3621(b), the Program Statement cannot violate § 3624(c) either.") (citation omitted); <u>see also</u> <u>Hewitt v. Jett</u>, Civ. No. 09-1676 (RHK/RLE), 2010 WL 1417654 at *7 (D. Minn. March 15, 2010) ("We understand the <u>Miller</u> decision to stand for the proposition that requiring 'extraordinary and unusual circumstances' for an extended RRC placement is not a categorical exercise

---

> director of the BOP. Subject to further elaboration by the BOP or a specific decision by a warden applying this guidance, we do not understand this adjustment to supersede the provision of PS 7310.04 stating that "placement beyond 180 days [is] highly unusual, and only possible with extraordinary justification."

<u>Id.</u> at 757 n. 4.

of BOP discretion. We are presented with a similar situation here. Accordingly, because requiring "extraordinary and unusual circumstances" did not result in a categorical exercise of discretion in <u>Miller</u>, we cannot conclude that it does here. . . . We further note that our conclusion is buttressed by the fact that the District Courts of this Circuit, which have addressed this same issue, have consistently held that requiring 'unusual and extraordinary circumstances' does not contravene the provisions of the SCA.") (citations omitted), <u>aff'd</u>, 2010 WL 1416890 (D. Minn. April 6, 2010) (J. Kyle).

In sum, nothing in the April 14, 2008 Memorandum prevents the BOP from designating inmates to a RRC for a duration that will provide the greatest likelihood of successful integration, including for periods in excess of six months and up to 12 months. To the contrary, with the understanding that inmates are now eligible for a maximum of 12 months pre-release RRC placement, the April 14, 2008 Memorandum explicitly provides that BOP staff must approach every inmate's assessment individually, use the five-factor criteria from 18 U.S.C. § 3621(b), and ensure that the placement provides the greatest likelihood of successful integration into the community. <u>See</u> Miller Decl., Ex. A at pp. 3-4. Although the April 14, 2008 Memorandum, like Program Statement 7310.04 approved by the Eighth Circuit in <u>Miller</u>, shifted the approval for RRC placement over six months to the Regional Director, it did not improperly take away the opportunity for the BOP to exercise the discretion provided to it under §§ 3621(b) and 3624(c).[9] <u>See</u> <u>Hewitt</u>, 2010 WL 1417654

---

[9]    This Court applies some deference to the April 14, 2008 Memorandum under <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), despite the fact that the Memorandum was not subject to the rigors of the Administrative Procedure Act, including public notice and comment.  The Court reaches this conclusion because the Memorandum involved  a permissible construction of the Second Chance Act. <u>See</u> <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995) (treating with "some deference" under <u>Chevron</u>

at *7 ("Counseled by the analysis in <u>Miller</u>, we are compelled to conclude that requiring a more substantial showing for an extended placement does not preclude the BOP from conducting an individualized assessment, and therefore, we find that the Guidance Memorandum is consistent with the SCA, and that the BOP conducted its assessment of the Petitioner in accordance with the SCA's provisions.").

Just as in <u>Miller</u>, an inmate such as Arthur has the opportunity to show, albeit to a different person, that based on the individual circumstances of his case, a longer placement is justified, and the April 14, 2008 Memorandum does not dictate a different outcome.

For all of the reasons stated above, the Court finds that April 14, 2008 Memorandum does not violate the Second Chance Act and as a result, the Petition should be dismissed.

This Court also rejects Arthur's assertion that the BOP erred in using the Review for Residential Reentry Center, Second Chance Act of 2007 form (<u>see</u> Kinyon Decl. ¶ 3, Attach. 2) in making its determination as to how much RRC time Arthur would receive, as opposed to an official form set forth by the BOP. <u>See</u> Petitioner's Mem. at p. 5; Petitioner's Brief at p. 9(A). Section 3624(c) requires the BOP to do an individualized assessment of the RRC placement of inmates that is consistent with § 3621(b). <u>See</u> 18 U.S.C. § 3624(c). As stated previously, §3621(b) provides that when deciding where to house an inmate, the BOP should consider:

(1)    the resources of the facility contemplated;
(2)    the nature and circumstances of the offense;
(3)    the history and characteristics of the prisoner;
(4)    any statement by the court that imposed the
        sentence. . . .

---

a BOP internal agency guideline interpreting a statute whose meaning was disputed because the guideline involved a permissible construction of the statute).

> (5)  any pertinent policy statement issued by the Sentencing
> Commission pursuant to section 994(a)(2) of Title 28.

18 U.S.C. § 3621(b).

The Review for Residential Reentry Center, Second Chance Act of 2007 form used in Arthur's RRC assessment considered: the resources of the facility contemplated; the nature and circumstances of Arthur's offense; Arthur's history and characteristics, including his participation, or lack of participation, in education and counseling programs; his discipline history and his prior record; any statement by the sentencing court that imposed the sentence against Arthur; the fact that Arthur was sentenced below the Sentencing Commission's guideline range for the offense for which he was convicted; and Arthur's resources.  See Kinyon Decl. ¶ 3, Attach. 2 (Review for Residential Reentry Center, Second Chance Act of 2007).  This Court finds that the criteria considered in the form used to recommend RRC placement for Arthur was consistent with factors required to be considered in an RRC placement under § 3621(b) and § 3624 and thus, Arthur's argument that an official form should be used does afford him any relief.

## C.    Security-Classification Claim

Arthur argued that BOP staff violated 18 U.S.C. § 3621 and Program Statement 5100.08 by denying his request for a "'Code 308 – Lesser Security – Institutional Classification Transfer'" to community confinement, despite his negative risk BP-388 score. See Petition at p. 3; see also Petitioner's Mem. at pp. 3, 11; Petitioner's Brief at pp. 11-12.

The language of 18 U.S.C. § 3621(b), which provides that the "Bureau may designate any available penal or correctional facility that meets minimum standards of

health and habitability . . . that the Bureau determines to be appropriate and suitable," is

discretionary in that it does not requires that the BOP place an inmate at a particular facility.

See also Heppner v. Roal, Civ. No. 09-2926 (PAM/JJK), 2010 WL 1380141 at *1 (D. Minn.

March 31, 2010) ("The BOP's discretion in determining the location and transfer of

prisoners is granted by 18 U.S.C. § 3621(b); PS 5100.08 is the BOP's implementation of

the discretion it derives from that statute."). Thus, there is no there is no requirement under

§ 3621(b) that the BOP must house an inmate with Arthur's security score in a RRC.

Program Statement 5100.08 lists four security levels (not including administrative):

High, Medium, Low, and Minimum. See Program Statement 5100.08,[10] Ch. 1, p. 2; Ch. 5,

p. 12. The lowest numeric level list is 0, which falls under the Minimum Security level and

provides for a Custody Level of "COMMUNITY and OUT." Id. There is no category listed

for a negative security score. The definitions section of Program Statement 5100.08

provides that "community custody" is:

> The lowest custody level assigned to an inmate which affords
> the lowest level of security and staff supervision. An inmate
> who has COMMUNITY custody may be eligible for the least
> secure housing, including any which is outside the institution's
> perimeter, may work on outside details with minimal
> supervision, and may participate in community-based program
> activities if other eligibility requirements are satisfied.

Id., Ch 2, p. 1 (emphasis added). "Out Custody" is defined as:

> The second lowest custody level assigned to an inmate
> requiring the second lowest level of security and staff
> supervision. An inmate who has OUT custody may be
> assigned to less secured housing and may be eligible to for
> work details outside the institution's secured perimeter with a
> minimum two-hour intermittent staff supervision.

---

[10]     Program Statement 5100.08 can be found at http://www.bop.gov/policy/
progstat/5100_008.pdf.

Id., Ch. 2, p. 4.

Assuming that Arthur falls under the minimum security level criteria, he qualifies for a custody level of "COMMUNITY" and "OUT," meaning that he could be placed in less secured housing or a community based program, like a RRC. FCP-Duluth a federal prison camp, where Arthur is housed, is a minimum security institution. See http://www.bop.gov/locations/institutions/index.jsp. As such, based on the lowest security level (minimum security level), the BOP did not error under Program Statement 5100.08 in keeping Arthur in a minimum security institution (i.e., FCP-Duluth), as opposed to placing him in a RRC, considering that a minimum security institution is commensurate with the custody level of "COMMUNITY" and "OUT." In any event, even if Arthur had a "COMMUNITY" custody level, this would not mandate placement in a RRC, given the permissive language of Program Statement 5100.08, which only provides that someone with this classification "may participate in community-based program activities." Program Statement 5100.08, Ch. 2, p. 1 (emphasis added); see also Program Statement 5100.08, Chapter 6, p. 1 ("It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines."). The permissive nature of Program Statement 5100.08 and 18 U.S.C. § 3621(b) (from which Program Statement 5100.08 is derived) leads this Court to find that there is nothing stated in Program Statement 5100.08 requiring that an inmate, including

Arthur, be placed in a RRC.[11]  In sum, Arthur's Petition should be denied because the BOP is not mandated to place Arthur in a RRC based on his security score.

## IV.  RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.  Ronald A. Arthur's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 1] be **DISMISSED WITH PREJUDICE**; and

2.  Ronald A. Arthur's Motion for Judgment on the Pleadings [Docket No. 13] be **DENIED**.

---

[11]  This Court notes that to the extent Arthur is asserting that the BOP's failure to transfer him to RRC amounted to a violation of due process (see Petitioner's Brief at pp. 9), there is no due process protections required with regards to discretionary transfers of prisoners.  See Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) ("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process.").  As for depriving him of equal protection of the law, Arthur only asserted that he should not be treated differently than inmates in the Third Circuit who have the benefit of a holding in Woodal v. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).  See Petitioner's Brief at pp. 6-7, 9-10.  However, the BOP is not required by equal protection principles to follow a Third Circuit decision outside of the Third Circuit.  See Fristoe v. Thompson, 144 F.3d 627, 630 (10th Cir. 1998) ("Contrary to appellant's contentions, however, the BOP is not compelled by equal protection principles to acquiesce nationwide in the Ninth Circuit's decision."); see also Stevenson v. FCI Waseca, Civ. No. 09-1755 (RHK/JSM), 2009 WL 3304837 at *3 n. 3 (D. Minn. Oct. 13, 2009) (same) (string citation omitted); Royal v. Scibana, NO. CIV-07-774-R, 2008 WL 582349 at *8 (W.D. Okla. Feb. 29, 2008) (same) (citations omitted); Parsons v. Pitzer, 960 F. Supp 191, 193-194 (W.D. Wis.1997) ("The fact that a circuit court of appeals issues a decision on the proper interpretation of a statute does not mean that entities applying that same statute in other circuits must abide by the same interpretation."), aff'd 149 F.3d 734 (7th Cir. 1998).

Dated:        July 6, 2010


                        s/ Janie S. Mayeron
                        JANIE S. MAYERON
                        United States Magistrate Judge



Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties on or before **July 20, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.